Kevin A. Michael, OSB No. 106695
COZEN O'CONNOR
999 Third Avenue, Suite 1900
Seattle, Washington 98104
Telephone: 206.340.1000
Toll Free Phone: 800.423.1950
Email: kmichael@cozen.com

*Attorney for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| GREAT NORTHERN INSURANCE COMPANY, an Indiana corporation, and FEDERAL INSURANCE COMPANY, an Indiana corporation,<br><br>        Plaintiffs,<br><br>    v.<br><br>CROWN PINE TIMBER 4, a Delaware limited partnership,<br><br>        Defendant. | Case No. 3:18-cv-2104<br><br>**COMPLAINT FOR DECLARATORY RELIEF** |

NOW COMES Plaintiffs Great Northern Insurance Company ("Great Northern") and Federal Insurance Company ("Federal") by and through its counsel, Kevin A. Michael of Cozen O'Connor, and files this Complaint for Declaratory Relief against Defendant Crown Pine Timber 4, L.P. ("Crown Pine"). Great Northern and Federal are jointly referred to herein as "Chubb." Chubb alleges as follows:

## I.     INTRODUCTION

1.     This is an insurance coverage action seeking a declaration that Chubb has no duty to defend or indemnify Crown Pine with respect to an arbitration counterclaim brought against Crown Pine by Crosby Land & Resources, LLC ("Crosby") in the arbitration titled *Crown Pine Timber 4, LP v. Crosby Land & Resources, LLC*, AAA Case No. 01-17-0001-9989 (the "Underlying Arbitration").

2.     The counterclaim asserted against Crown Pine arises out of allegations that Crown Pine mismanaged timberland owned by Crosby in violation of a lease agreement.

3.     Crown Pine previously tendered its defense and indemnity of the counterclaim to Chubb. Chubb denied Crown Pine's tender for numerous reasons. Herein Chubb seeks a declaration confirming that it has no duty to defend Crown Pine in the Underlying Arbitration, as well as a declaration it no duty to indemnify Crown Pine in the event of an adverse award in the Underlying Arbitration.

## II.     THE PARTIES

4.     Plaintiff Great Northern Insurance Company is an insurance company incorporated in Indiana and having its principal place of business in New Jersey.

5.     Plaintiff Federal Insurance Company is an insurance company incorporated in Indiana and having its principal place of business in New Jersey.

6.     Defendant Crown Pine Timber 4, LP is a Delaware limited partnership with a principal place of business in Oregon and/or conducting business in Oregon at or about One SW Columbia Street, Suite 1700, Portland.

### III. JURISDICTION AND VENUE

7. This Court has jurisdiction over this matter based on diversity of citizenship pursuant to 28 U.S.C. § 1332 because the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and the suit is between citizens of different states.

8. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the insurance contracts at issue were issued to Crown Pine in this District.

9. This Complaint is filed pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 *et seq*. An actual, justiciable controversy exists between Chubb and Crown Pine that involves the rights and liabilities under contracts of insurance, and this controversy may be resolved by a judgment in this action.

### IV. THE UNDERLYING ARBITRATION

10. In or around 1965, Crosby and/or its predecessors-in-interest entered into a lease agreement allowing the lessee to grow/harvest timber on certain parcels of timberland located in Louisiana (the "Lease").

11. After a series of assignments and/or other transactions, Crosby is now the current lessor of the timberland under the Lease and Crown Pine is now the current lessee of the timberland under the Lease.

12. In January 2016, Crosby filed a "Petition for Specific Performance" against Crown Pine in state court in Louisiana seeking specific performance of certain alleged obligations under the Lease (the "Lawsuit"). The Lawsuit did not seek money damages. A copy of the Lawsuit is attached hereto as **Exhibit A**.

13. The Lawsuit was not tendered to Chubb for insurance coverage.

14. In April 2017, Crown filed a Demand for Arbitration against Crosby, which arbitration demand was later amended in December 2017. The Demand and the Amended Demand in the Underlying Arbitration, are attached hereto as **Exhibit B**.

15. The Demands in the Underlying Arbitration assert that the dispute between the parties is governed by an arbitration clause in the Lease, and that Crosby filed the Lawsuit in violation of the arbitration clause.

16. The Demands in the Underlying Arbitration seek a declaration that Crown Pine is not obligated to produce or allow inspection of further documents regarding operation and management of the leased timberlands and that the Lease provides Crown Pine with broad discretion as to timber harvesting and other operation and management of the leased timberlands.

17. On August 7, 2017, Crosby filed a Counterclaim against Crown Pine (the "Counterclaim"). The Counterclaim is attached hereto as **Exhibit C**.

18. As quoted in the Counterclaim, the Lease obligates Crown Pine to operate and manage the timberlands "in a manner designed to establish a regular annual harvesting, stocking and restocking program on a rotation period of approximately 30 years."

19. The Counterclaim asserts that the Lease thereby obligated Crown Pine to follow industry standards and/or Crown Pine's own practices with respect to a management program for annual harvesting, stocking and restocking of the Crosby timberland.

20. In the Counterclaim, Crosby asserts that those industry standards serve the purposes of "maximizing the value of Crosby's forest" and that Crown prematurely harvested and otherwise mismanaged Crosby's leased land in breach of the Lease and those standards.

21. The Counterclaim alleges that Crown Pine breached the Lease by its: a) cutting or harvesting of trees; b) merchandising of wood products; c) site preparation for planting of trees;

d) selection of trees for planting; e) planting of trees; f) stocking levels; g) post establishment releases/treatments; h) payment for severed wood; i) control of invasive species; j) endangered species legal and regulatory compliance; k) establishment and maintenance of boundary lines; l) maintenance of roads and fire lines; m) protection of creeks, streams, waterways, and wetlands; and n) control of soil erosion.

22. The Counterclaim asserts a cause of action for breach of the Lease and seeks a declaration regarding Crown Pine's obligations with respect to the land management aspects listed above.

## V. THE GREAT NORTHERN PRIMARY POLICIES

23. Great Northern Insurance Company issued Policy No. 3600-83-03-PTL to Crown Pine Holdings, L.P., effective November 1, 2015 to November 1, 2016, which policy was renewed for the period of November 1, 2016 to November 1, 2017 (collectively, the "Great Northern Policies").  Crown Pine Timber 4 is identified as an "insured" on the Great Northern Policies.  A true and correct copy of portions of the Great Northern Policies are attached hereto as **Exhibit D**.[1]

24. The Great Northern Policies contain the following applicable insuring agreement:

> **Bodily Injury And Property Damage Liability Coverage**
>
> Subject to all of the terms and conditions of this insurance, we will pay damages that the **insured** becomes legally obligated to pay by reason of liability:
>
> • imposed by law; or
>
> • assumed in an **insured contract**;
>
> for **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies.
>
> This coverage applies only to such **bodily injury** or **property damage** that occurs during the policy period.

---

[1] Exhibit D contains only the Liability Declarations for both the 2015-16 and the 2016-17 Great Northern Policies, as well as the relevant coverage form, which contains the provisions relied upon herein. Great Northern can supply the full Great Northern Policies if any other terms not contained in Exhibit D become relevant.

COMPLAINT FOR DECLARATORY RELIEF- 5
CASE NO. 3:18-CV-2104

25. The Great Northern Policies define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

26. The Great Northern Policies define "property damage" as "physical injury to tangible property, including loss of use of that property…" and "loss of use of tangible property that is not physically injured…"

27. The Great Northern Policies contain the following relevant exclusions, which apply to "property damage to premises while rented to [Crown Pine]…":

> **Contracts:** This insurance does not apply to **bodily injury** or **property damage** for which the insured is obligated to pay damages by reason of assumption of liability in a contract or agreement.
>
> This exclusion does not apply to liability for damages:
>
> - that such **insured** would have in the absence of such contract or agreement; or
>
> - assumed in an oral or written contract or agreement that is an **insured contract**…
>
> ***
>
> **Expected or Intended Injury:** This insurance does not apply to **bodily injury** or **property damage** arising out of an act that:
>
> - is intended by the **insured**; or
>
> - would be expected from the standpoint of a reasonable person in the circumstances of the **insured**;
>
> to cause **bodily injury** or **property damage**, even if the actual **bodily injury** or **property damage** is of a different degree or type than intended or expected.
>
> ***
>
> **Loss In Progress:** This insurance does not apply to **bodily injury** or **property damage** that is a change, continuation or resumption of any **bodily injury** or **property damage** known by you, prior to the beginning of the policy period, to have occurred.
>
> **Bodily injury** or **property damage** will be deemed to be known by you:

  **A.** if such injury or damage is known by, or should have been known from the standpoint of a reasonable person in the circumstances of:

    **1.** you;

    **2.** any of your director, managers, members, **officers** (or there designees) or partners (whether or not an **employee**); and

  **B.** when any person described in paragraph A. above:

    **1.** reports all, or any part, of any such injury or damage to us or any other insurer

    **2.** receives a claim or demand for damages because of any such injury or damage; or

    **3.** becomes aware that any such injury or damage has occurred or has begun to occur.

28. The Great Northern Policies, the full terms incorporated by reference herein, contain other terms, conditions and exclusions that may limit or preclude coverage for the Underlying Arbitration.

## VI. THE FEDERAL POLICIES

29. Federal issued Policy No. 9364-31-99 to Crown Pine, effective November 1, 2012 to November 1, 2013, and subsequently renewed annually through at least November 1, 2016 to November 1, 2017 (collectively, the "Federal Policies"). A true and correct copy of portions of the Federal Policies are attached hereto as **Exhibit E**.[2]

30. For the policy periods spanning 2012-13, 2013-14, and 2014-15, the Federal Policies apply in excess of underlying primary policies issued by American States Insurance Company. For 2015-16 and 2016-17, the Federal Policies apply in excess of the Great Northern Policies. Each of the underlying primary policies is subject to a per-occurrence limit of $1 million annually.

---

[2] Exhibit E contains only the Declarations for the various Federal Policies, as well as the relevant coverage form and the "Care, Control or Custody" Endorsement, which contains the provisions relied upon herein. Federal can supply the full Federal Policies if any other terms not contained in Exhibit E become relevant.

31. The Federal Policies provide the following coverage under "Excess Follow-Form Coverage A":

> Subject to all the terms and conditions applicable to Excess Follow-Form Coverage A, we will pay, on behalf of the **insured**, that part of **loss** to which this coverage applies, which exceeds the applicable **underlying limits**.
>
> This coverage applies only if the triggering event that must happen during the policy period of the applicable **underlying insurance** happens during the policy period of this insurance.
>
> This coverage will follow the terms and conditions of **underlying insurance** described in the Schedule of Underlying Insurance, unless a term or condition contained in this coverage:
>
> - Differs from any term or condition contained in the applicable **underlying insurance**; or
>
> - Is not contained in the applicable **underlying insurance**.
>
> With respect to such exceptions described above, the terms and conditions contain in this coverage will apply, to the extent such terms and conditions provide less coverage than the terms and conditions of the applicable **underlying insurance**.
>
> This coverage does not apply to any part of **loss** within **underlying limits**, or any related costs or expenses.

32. The Federal Policies also provide the following coverage under "Umbrella Coverage B":

> Subject to all of the terms and conditions applicable to Umbrella Coverage B, we will pay, on behalf of the **insured**, **loss** by reason of liability:
>
> - imposed by law; or
>
> - assumed in an insured contract;
>
> for **bodily injury** or **property damage** caused by an **occurrence** to which this coverage applies.
>
> \*\*\*
>
> This coverage does not apply to any part of:
>
> A. **loss** to which **underlying insurance** would apply, regardless of whether or not:

1. **underlying insurance** is available; and

2. the **applicable underlying limits** have been exhausted.

B. **loss** to which **underlying limits** apply; or

C. any costs or expenses related to **loss** as described in paragraphs A. or B. above.

33. With respect to defense obligations, the Federal Policies state:

Subject to all of the terms and conditions of this insurance, we will have the right and duty to defend the **insured**:

- under Excess Follow-Form Coverage A, against a **suit** in connection with a **loss** to which such coverage applies, if the applicable **underlying limits** have been exhausted by payment of judgments, settlements or related costs and expenses (if such costs or expenses reduce such limits); or

- under Umbrella Coverage B, against a **suit** to which such coverage applies, even if such **suit** is false, fraudulent, or groundless.

We have no duty to defend any person or organization against any claim or **suit**:

- to which this insurance does not apply; or

- if any other insurer has a duty to defend.

34. The Federal Policies define "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

35. The Federal Policies define "property damage" as "physical injury to tangible property, including resulting loss of use of that property…" and "loss of use of tangible property that is not physically injured…"

36. Umbrella Coverage B contains exclusions substantively identical to the exclusions in the Great Northern Policies titled "Loss in Progress" and "Expected or Intended."

37. Umbrella Coverage B is further subject the "Care Control, or Custody" exclusion, which states:

> This insurance does not apply to **property damage** to property described below, if the property is in the care, control or custody of the **insured**.
>
> Description of Property:
>
> Real and Personal Property

38. The Federal Policies, the full terms incorporated by reference herein, contain other terms, conditions and exclusions that may limit or preclude coverage for the Underlying Arbitration.

### VII. COUNT 1: DECLARATORY JUDGMENT

39. Chubb hereby incorporates and re-alleges the allegations in paragraphs 1 – 38 as if fully set forth herein.

40. There exists a genuine and bona fide dispute, and an actual controversy and disagreement, between Chubb and Crown Pine with regard to whether the Great Northern Policies and the Federal Policies provide any coverage with respect to the Underlying Arbitration.

41. The Counterclaim does not seek damages for "property damage," as defined in the Great Northern Policies and the Federal Policies (together, the "Chubb Policies").

42. The Counterclaim does not seek damages for "property damage" caused by an "occurrence," as that term is defined in the Chubb Policies.

43. Alternatively, any liability of Crown Pine in the Underlying Arbitration is excluded from coverage by the "Contracts," "Expected or Intended," and/or "Loss in Progress" exclusions in the Great Northern Policies.

44. In addition to the reasons stated above, the Excess Follow-Form Coverage A of the Federal Excess Policies does not apply because the underlying primary policies have not been exhausted.

45. In addition to the reasons stated above, the Umbrella Coverage B of the Federal Policies does not apply because of the exclusions for "Loss in Progress," "Expected or Intended" and "Care, Custody, or Control."

46. Accordingly, Chubb has no duty to defend or indemnify Crown Pine with respect to the Underlying Arbitration and/or Counterclaim.

47. There are other policy provisions that may apply. Chubb reserves the right to assert additional bases for declaratory judgment under the attached Chubb Policies.

## VIII.  PRAYER FOR RELIEF

WHEREFORE, Chubb prays for judgment as follows:

1. For a declaration that Chubb has no duty to defend Crown Pine with respect to the Underlying Arbitration and/or Counterclaim;

2. For a declaration that Chubb has no duty to indemnify Crown Pine with respect to the Underlying Arbitration and/or Counterclaim;

3. For costs of suit incurred herein; and

4. For such other and further relief as the Court deems proper.

## JURY DEMAND

Chubb demands a trial by jury on all issues of fact, if any.

DATED this 7th day of December, 2018.

COZEN O'CONNOR

By:  /s/ Kevin A. Michael
Kevin A. Michael, OSB No. 106695
E-mail: kmichael@cozen.com
999 Third Avenue, Suite 1900
Seattle, Washington 98104
Telephone: 206.340.1000

*Attorneys for Plaintiffs*